IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
|---|---|---|
| | : | |
| | : | CRIMINAL ACTION NO. 13-257 |
| v. | : | CIVIL ACTION NO. 15-0327 |
| | : | |
| TARIK HOOKS | : | |

# M E M O R A N D U M

GENE E.K. PRATTER, J.                                                                 JUNE 9, 2015

Tarik Hooks entered a guilty plea in open court on August 12, 2013, admitting his guilt with respect to six (6) bank robberies and three (3) attempted bank robberies that were the subject of a grand jury indictment. He entered his guilty plea in accordance with a written agreement with the Government that had been negotiated on his behalf by his counsel who, likewise, was present beside him when he entered his plea in open court. The written plea agreement contains a broad appellate waiver which was orally reviewed with Mr. Hooks at the time of his plea hearing and before he actually entered his plea. At that time Mr. Hooks acknowledged his assent to and his awareness and understanding of the terms of his agreement, including the scope of the appellate waiver.

At the sentencing hearing on December 17, 2013, Mr. Hooks raised several objections to the Pre-Sentence Report, some of which were accepted by the Court and some of which were not. In particular, the Court denied Mr. Hooks's application for a formal downward departure that was based upon Mr. Hooks's argument that his criminal history was overstated or otherwise the product of aberrant behavior arising from a diminished mental capacity. Though declining to depart downward, the Court did permit argument of diminished capacity as part of counsel's argument for a downward variance instead. Concluding that, under the Sentencing

1

Guidelines regimen, Mr. Hooks had a base offense level calculation of 25 and was properly in a Category V criminal history category, the Court determined Mr. Hooks had earned a 115 months incarceration sentence, which was in the mid-range of the 110-125 months Guidelines recommendation.

Mr. Hooks has now moved to vacate, set aside or correct his sentence. Initially, he argued two grounds, namely, that his lawyer neglected to review the Pre-Sentence Report with him, thus effectively losing for him the opportunity to make cogent objections to the report. Second, Mr. Hooks also urged that his lawyer had failed to pursue an appeal following the sentence.[1]

Having carefully considered Mr. Hooks's submissions, the Court is denying them for the reasons summarized below.

**Discussion**

Mr. Hooks makes three claims of his counsel's ineffectiveness: first, he says his lawyer failed to review the Pre-Sentencing Report, thus impeding the making of objections to it, particularly as to Mr. Hooks's criminal history; second, Mr. Hooks states that his lawyer failed to pursue an appeal on his behalf; and, third, he claims that his plea was neither knowing nor voluntary because his lawyer was ineffective in advising him to sign the agreement.

Mr. Hooks's arguments must be measured against Strickland v. Washington, 466 U.S. 668 (1984). The legal standards articulated in Strickland are well-settled and straight forward. To succeed with his motion Mr. Hooks must show (1) that his lawyer's performance fell below an objective standard of reasonableness in the rendering of his professional duties, and (2) therefore, counsel's error(s) prejudiced Mr. Hooks in some demonstrable way. The burden placed upon the proponent of such a claim is a heavy one. Strickland, 466 U.S. at 689. Analytically, because

---

[1] Mr. Hooks has most recently, on a pro se basis, sought to supplement his motion (which was amended after certain clarifying "house-keeping" efforts) by also arguing his lawyer's ineffectiveness for having advised him (Mr. Hooks) to sign the guilty plea agreement at all.

failure to establish prejudice would make it unnecessary to evaluate the quality of counsel's services, the Court will first focus on the question of prejudice. McAleese v. Mazurkiewicz, 1 F.3d 159, 171 (3d Cir. 1993); United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987).

Stated simply, Mr. Hooks's claims fail because he cannot show any prejudice resulting from a counsel's supposed ineffectiveness[2]: the defendant did actually pursue objections to the P.S.R. as well as an appeal to the Court of Appeals, and the colloquy conducted at the guilty plea hearing underscores Mr. Hooks's knowing and voluntary decision-making. Put otherwise, Mr. Hooks cannot establish the requisite "reasonable probability" that but for counsel's alleged errors the result of the proceedings would have been different, Strickland, 466 U.S. at 692, that is, but for counsel's ineffective advice Mr. Hooks would not have executed the plea agreement and pled guilty, and, again but for counsel's ineffectiveness, the Court would have imposed a lesser sentence.

A review of the record underscores why Mr. Hooks's arguments must fail. Given his unequivocal and unambiguous confession, together with the other evidence marshalled by the Government proving that Mr. Hooks committed or attempted to commit ten bank robberies, the exercise of his free-will to plead guilty thereby securing the three level Guidelines reduction for accepting responsibility made good sense. Furthermore, as the Government underscores, Mr. Hooks's acceptance of responsibility for the Delaware robbery (the tenth robbery then added to the nine covered by the Indictment) as part of this federal prosecution. Mr. Hooks escaped the likelihood of a separate prosecution and additional, possibly consecutive sentence for a conviction in the District of Delaware. Specifically, to Mr. Hooks's benefit (and in keeping with the advice apparently communicated by counsel to Mr. Hooks that Mr. Hooks now ironically says is evidence

---

[2] The Court is making no statement - - and certainly reaches no conclusion - - as to any error or substandard performance by counsel. Indeed, Mr. Hooks has presented no gauge against which to measure counsel's conduct, and the Court is not independently aware of any such sub-standard conduct.

3

of counsel's undue and erroneous pressure to secure Mr. Hooks's agreement to plead guilty), the plea agreement stipulated the inclusion of the Delaware robbery as "related conduct." As a result, that robbery actually had no impact on Mr. Hook's Guidelines calculation inasmuch as Mr. Hooks committed more than five robberies overall. This was discussed with Mr. Hooks at his sentencing hearing. As for counsel's other efforts on behalf of Mr. Hooks, counsel did in fact undertake efforts which the Court entertained and ultimately rejected, determining to impose the lowest fair and reasonable sentence once a full consideration of all of the § 3553 factors were evaluated. To reiterate, Mr. Hooks's prior criminal history conduct placed him squarely within Category V. In just under three weeks Mr. Hooks committed the nine offenses covered by the Indictment. He had six earlier separate and distinct convictions. However, Guidelines points were assessed for only four of those convictions due to operation of Guideline § 4A1. 2(e)(3). The various convictions and their impact upon Mr. Hooks's criminal history category calculation are described accurately in the Government's Response (Doc. No. 32)[3] and added up to a score of 10, putting Mr. Hooks in a Category V, the category used by the Court to fashion the sentence that the Court determined Mr. Hooks had earned.

With respect to the allegation of counsel's neglect to file an appeal, this too falls short of the requisite showing of prejudice. Presumably Mr. Hooks has not forgotten that he himself filed an appeal to the Third Circuit Court of Appeals. The appellate court rejected the appeal on the strength of the appellate waiver in the plea agreement. United States v. Hooks, No. 13-4833 (Nov. 5, 2014). The Court of Appeals then refused Mr. Hooks's pro se motion for reconsideration as well. Thus, counsel's not pursuing of an appeal cannot be said to have prejudiced Mr. Hooks.

Finally, Mr. Hooks's eleventh hour additional charge against his lawyer for allegedly

---

[3] They were described in essentially the same fashion during the sentencing hearing and defense counsel stated at that hearing that the recitation was accurate. Mr. Hooks said nothing to counter his counsel and did not otherwise object to the description of his criminal history.

erroneously urging him to sign the plea agreement is equally unsuccessful because the record satisfactorily demonstrates that, even if he had not seen the plea agreement until the day of the plea hearing, his plea was knowing and voluntary. In addition to the simple good sense of the negotiated deal outlined above, the record is clear that the Court addressed Mr. Hooks in open court to determine that Mr. Hooks was proceeding pursuant to his own free will having previously fully and sufficiently discussed the agreement with counsel whose advice Mr. Hooks received and accepted as being to his satisfaction. In particular, at the plea hearing the Court confirmed that Mr. Hooks understood the charges, he understood the scope of the express agreement he had and he understood the limitations on his right to appeal. Moreover, Mr. Hooks expressly acknowledged that he was under no duress and no belief that any other term, condition or variable (other than what was set forth in the plea agreement) was causing him to plead guilty and waive his various rights by doing so.

**Conclusion**

For the foregoing reasons, the Court concludes that Mr. Hooks's claims for relief are without merit and no evidentiary hearing on his allegations or arguments is required or necessary. Wells v. Petsock, 941 F.2d 253, 259-60 (3d. Cir. 1991). The Court also concludes that no certificate of appealabilty should issue. 28 U.S.C. §2253(c)(2). See Santana v. United States, 98 F.3d 752, 757(3d Cir. 1996).

An order consistent with this Memorandum follows.

BY THE COURT:

 /s/ Gene E.K. Prater 
GENE E.K. PRATTER
United States District Judge