IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| TARIK HOOKS | : | No. 13-257 |
| | : | |

**MEMORANDUM**

PRATTER, J.  DECEMBER 13, 2022

Tarik Hooks seeks early termination of supervised release pursuant to 18 U.S.C. § 3583(e), citing his successful rehabilitation since his release from custody on June 1, 2021. The Government responds that Mr. Hooks's motion does not set forth an adequate basis to warrant an alteration of the sentence imposed by the Court. The Court agrees that Mr. Hooks has not met his burden to show that early termination of supervised release is warranted here and thus denies the motion.

### BACKGROUND

#### I. Mr. Hooks's Conviction

In 2013, Mr. Hooks pled guilty to six counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and three counts of attempted bank robbery, in violation of 18 U.S.C. § 2113(a). All of these crimes occurred between February 2, 2013 and February 21, 2013, and Mr. Hooks stole over $24,000 as a result of the completed robberies. Mr. Hooks did not display a weapon at any of these robberies, either attempted or completed. He had several prior convictions, including theft by receiving stolen property in 1999, unauthorized use of an automobile in 2000, unauthorized use of an automobile in 2001, access device fraud in 2001, carrying a firearm without a license in Philadelphia in 2002, and criminal attempt to commit theft by deception in 2004. These prior convictions resulted in an advisory guideline range of 100 to 125 months' imprisonment, as computed by the Probation Office. After considering the sentencing factors under 18 U.S.C.

1

§ 3553(a), the Court found that Mr. Hooks had earned a sentence of 115 months' imprisonment, followed by three years of supervised release.

Mr. Hooks completed his 115 months of imprisonment and was released from prison on June 1, 2021, to begin his supervised release. While incarcerated, he incurred two disciplinary infractions: giving or accepting money without authorization and phone abuse in 2013, and possession of a hazardous tool in 2017. Mr. Hooks has just under 18 months remaining to serve on his three-year period of supervised release.

## II. Mr. Hooks's Request for Early Termination of Supervised Release

On October 13, 2022, Mr. Hooks filed a *pro se* motion for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e).[1] Mr. Hooks argues that he has shown exemplary conduct during his incarceration and since his release by participating in Bureau of Prisons ("BOP") rehabilitative programming, securing and maintaining gainful employment, completing mental health treatment, satisfying his monetary obligations, maintaining his spiritual life through his masjid, mentoring younger individuals in memory of his son, and planning to establish a non-profit, community-based organization to mentor children within the juvenile court system. He also argues that there is a disparity in his sentencing because, had he been sentenced after the BOP's implementation of the First Step Act, his sentence could have been reduced upon his completion of recidivism reduction programs. Mr. Hooks avers that he "has a low recidivism rate and will more than likely never reoffend and will continue to be a positive asset to society," so supervised release is no longer serving its intended purposes in these circumstances. Mot. to Terminate Supervised Release Early, Doc. No. 65, at 2, 4.

---

[1] Two motions to terminate supervised release appear on this docket. *See* Pro Se Mots. to Terminate Supervised Release Early, Doc. Nos. 65 & 66. These documents are identical, so the Court will make reference only to the motion filed on October 13, 2022.

## Legal Standards

This Court has authority to grant early termination of supervised release pursuant to 18 U.S.C. § 3583(e), which provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e). In exercising its discretion, a court deciding a motion for early termination must take into account the following factors:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*United States v. Davies*, 746 F. App'x 86, 88–89 (3d Cir. 2018) (citing 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D) & (a)(4)–(7)).

The Third Circuit Court of Appeals has stated that "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)). District courts in the Third Circuit need not "make specific findings of fact" as to each of the § 3553(a) factors. *Id.* at 52–53.

A defendant seeking to reduce his or her sentence bears the burden of persuasion. *See United States v. McDowell*, 888 F.2d 285, 291 (3d Cir. 1989) ("[T]he burden of ultimate persuasion should rest upon the party attempting to adjust the sentence . . . .").

## DISCUSSION

This Court has authority to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release." 18 U.S.C. § 3583(e)(1). Mr. Hooks has served approximately 18 months of supervised release, so the Court may now consider the required factors under § 3553(a), whether Mr. Hooks's conduct warrants early termination, and whether such early termination would be in the interest of justice.

### I. Section 3553(a) Factors

Pursuant to § 3553(a)(1), a district court must consider the nature and circumstances of the offense and the defendant's history and characteristics. In 2013, Mr. Hooks pled guilty to 9 counts related to a string of attempted or completed bank robberies he undertook over the course of three weeks. Because Mr. Hooks had a significant criminal history, the Court imposed a sentence of 115 months' imprisonment, followed by three years of supervised release. Mr. Hooks committed a couple of infractions during his approximately 9.5-year term of incarceration but has been compliant with the terms of his supervised release. He now has about 18 months remaining in his term of supervised release.

Under § 3553(a)(2), this Court also examines the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with necessary training, medical care, or other correctional treatment. The Government confirms that Mr. Hooks's term of supervised release has, thus far, been uneventful—he has not been arrested or otherwise incurred violations in the past 18 months. The Government also agrees that Mr. Hooks

4

has maintained steady employment at Nature's Soy, working as a quality control supervisor, and that he completed significant BOP rehabilitation and educational programs while incarcerated. Mr. Hooks's probation officer has classified the defendant as a low/moderate risk level offender.

Still, Mr. Hooks himself admits his crimes were serious, and the Court is mindful of the general deterrence and judicial transparency purposes furthered by requiring Mr. Hooks to actually serve the time to which he was sentenced.

The Court also considers the factors set out under §§ 3553(a)(4) and 3353(a)(6) (*i.e.*, the kinds of sentence and sentencing range established for the defendant's crimes and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct). At the time of his guilty plea, the Probation Office determined an advisory guideline range of 100 to 125 months' imprisonment, and Mr. Hooks was found to have earned a sentence roughly in the middle of that range: 115 months' incarceration plus three years of supervised release. Mr. Hooks asserts that, had the BOP implemented the First Step Act of 2018 earlier, however, he would have been credited for additional time served upon the completion of various anti-recidivism courses, reducing his period of incarceration by 16 months. *See* 18 U.S.C. § 3632(d)(4)(A) (stating that "[a] prisoner . . . who successfully completes evidence-based recidivism reduction programming or productive activities shall earn time credits" of 10 to 15 days for every 30 days of participation in "recidivism reduction programming or productive activities"). The Government does not address the accuracy of Mr. Hooks's calculation as to time he *might* have been credited if the First Step Act had earlier been implemented. However, Mr. Hooks does not contend that the BOP miscalculated any credits due to him under the First Step Act or that the BOP simply refused to reduce his period of incarceration notwithstanding the applicability of the

5

First Step Act, in a manner that disadvantaged him as compared to other defendants with similar records incarcerated during the same period.

The other sentencing factors are not applicable to Mr. Hooks.

After consideration of the relevant § 3553(a) sentencing factors, the weight of the pertinent factors goes against early termination of supervised release, given in particular that Mr. Hooks has not offered a compelling reason that supervision currently imposes any specific hardship on him.

## II. Mr. Hooks's Conduct Does Not Warrant Early Termination

Although it is not necessary for a court to find that changed or extraordinary circumstances exist before granting a motion under 18 U.S.C. § 3583(e)(1), "'[g]*enerally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89). While "the mere absence of such a change or extraordinary circumstances is not a basis for denying it," *United States v. Mabry*, 528 F. Supp. 3d 349, 359 (E.D. Pa. 2021), simple compliance with the conditions of supervised release is generally insufficient to support early termination. *See United States v. Damiano*, No. 07-cr-153, 2020 WL 7263183, at *2 (E.D. Pa. Dec. 10, 2020); *United States v. Medina*, 17 F.Supp.2d 245, 247 (S.D.N.Y. 1998) ("While the [defendant's] post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.").

The Government does not deny that Mr. Hooks's post-incarceration record is faultless and he is in full compliance with the terms of his supervised release. The Court, too, appreciates the actions Mr. Hooks has taken to reintegrate into his community, including through his membership in a religious community, his maintenance of gainful employment, his mentorship of young people in honor of his son, and his plans to start a non-profit organization that will advance those

mentorship efforts, and the Court encourages Mr. Hooks to continue to find ways to both benefit from and give back to his community. Still, Mr. Hooks's compliance with the conditions of supervised release is what is expected of every defendant who is released on supervision. *Damiano*, 2020 WL 7263183, at *2. Mr. Hooks has not met his burden to show that such compliance warrants the termination of his supervised release.

### III. Early Termination of Supervised Release Is Not in the Interest of Justice

The Court must also consider whether Mr. Hooks's early release would be "in the interest of justice." 18 U.S.C. § 3583(e)(1). "[T]he 'interests of justice' standard contemplates a peculiarly context-specific inquiry" and cannot easily be reduced to "a general definition." *Martel v. Clair*, 565 U.S. 648, 663 (2012). The Third Circuit Court of Appeals has stated that "the primary purpose of supervised release is to facilitate the reentry of offenders into their communities rather than to inflict punishment." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012).

Mr. Hooks files his motion after having committed a string of bank robberies, which, in conjunction with his previous serious criminal history, earned him a sentence of 115 months of imprisonment, followed by three years of supervised release. Mr. Hooks has not stated, nor even implied, that the terms of his supervised release are so burdensome as to impede his reentry into his community, nor does he argue that those terms are now merely inflicting punishment on him. In fact, he does not articulate any specific details that would suggest that the terms of his supervised release are even minimally burdensome. Therefore, Mr. Hooks has not met his burden of showing that his three-year term of supervised release is greater than necessary to achieve the § 3553(a) sentencing goals or otherwise goes against the interests of justice.

7

## CONCLUSION

For these reasons, the Court denies Mr. Hooks's motion for early termination of supervised release. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE